```
 1              IN THE UNITED STATES DISTRICT COURT FOR
                THE WESTERN DISTRICT OF WASHINGTON
 2                          AT SEATTLE

 3   UNITED STATES OF AMERICA,          )
                                        )      Case No. CR08-244RSL
 4                    Plaintiff,        )
                                        )      Seattle, Washington
 5          v.                          )
                                        )      February 13, 2009
 6   LUCRETIA JAMES,                    )
                                        )      SENTENCING
 7                    Defendant.        )
                                        )
 8   _____)

 9

10              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE ROBERT S. LASNIK
11              UNITED STATES DISTRICT JUDGE

12


13
     For the Plaintiff:       Susan M. Roe
14                            Assistant U.S. Attorney
                              700 Stewart Street, Suite 5220
15                            Seattle, Washington  98101-1271

16   For the Defendant:       Jon R. Zulauf
                              Zulauf & Chambliss
17                            1809 Seventh Avenue, Suite 1301
                              Seattle, Washington  98101
18

19

20

21
     Joseph F. Roth
22   Official Court Reporter
     700 Stewart Street
23   Seattle, Washington 98101
     (206) 370-8508
24

25
```

1          THE CLERK:  Case CR08-244L, United States versus

2     Lucretia James.  Counsel, would you please make your appearances.

3          MS. ROE:  Good morning, Your Honor.  Susan Roe on behalf

4     of the United States.

5          THE COURT:  Hi, Ms. Roe.

6          MR. ZULAUF:  And Jon Zulauf here for Lucretia James.

7          THE COURT:  Hello, Ms. James and Mr. Zulauf.  And we

8     also have Patrick Robertson from U.S. Probation.  I have a number

9     of documents that I've reviewed in preparation for the sentencing

10    here today on Ms. James' plea of guilty to conspiracy to possess

11    with the intent to distribute controlled substances.

12      This is a Class A felony with a maximum punishment of life

13    imprisonment, a $4,000,000 fine, and five years of supervised

14    release.

15      It carries with it generally a mandatory minimum term of not

16    less than 10 years.  I've reviewed in preparation for the

17    sentencing Mr. Robertson's U.S. presentence report.  I have the

18    government's sentencing memorandum.  I have Mr. Zulauf's initial

19    presentence report with many documents and letters of support on

20    behalf of Ms. James.

21      I have defendant's supplemental presentence report, and then

22    a second supplemental, which was another letter of support.  So,

23    Mr. Zulauf, do I have everything you wanted me to have in

24    preparation for the sentencing?

25          MR. ZULAUF:  Yes, Your Honor.

1          THE COURT:  And have you had an opportunity to go over

2  the probation presentence report with Ms. James and make any

3  additions or corrections?

4          MR. ZULAUF:  I have.

5          THE COURT:  Ms. James, are you ready to proceed to

6  sentencing today?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  Ms. Roe.  And I also had some

9  motions to seal the sentencing memorandums, which I'm signing

10  also.

11          MR. ZULAUF:  Thank you.

12          MS. ROE:  Thank you, Your Honor.  Your Honor, as the

13  government has noted in its sealed sentencing memorandum, we are

14  moving for a 5K based on the defendant's cooperation.

15      And we set forth in there some of the reasons or the things

16  that she has done, as well as what she's expected to do in the

17  future.

18      We also noted in there an unusual visitor she had when she

19  was first arrested and thought that that should be brought to the

20  Court's attention, because it was an unusual event.  And Ms.

21  James' reaction was rather courageous in light of that.

22      We don't want to underestimate her cooperation, probably

23  based on her real desire to be back with her family.  But I would

24  like to address some of the statements made by defense counsel,

25  letters, as well as the evaluation.

1       The evaluation was really compelling in its sadness, and the

2   government -- Your Honor, I've reviewed hundreds of evaluations

3   over 20-some years, and this was one of the saddest I have seen.

4       And it was -- it moved -- I mean, it was moving in its sort

5   of broad breadth of how difficult her life has been.  Juxtaposed

6   with the letters from people, it was stunning how they seem to be

7   in a fantasy about this woman.

8       The letters were rife with things like, you know, this was

9   just a momentary lapse in judgment.  She'd had a good life.

10  She's bettered herself.  And there seemed to be very little

11  connection between the facts of her real life and how they viewed

12  her and what they expected her to do.

13      It seems overwhelming what she and her family is asking her

14  to do, which is to really be released now and resume her life and

15  raise her children and have everything fine.

16      And the fantasy was what kept coming through my mind as I

17  read this sort of road or this picture that they had drawn for

18  her.

19      Their letters and recommendations were also quite at odds

20  with the facts of this case, in that Ms. James was really very

21  involved in this drug smuggling and high-level drug activity.

22      She had taken a previous trip to California to know the

23  routes and where to go.  And 72 kilos of cocaine entrusted to one

24  person driving up I-5 is a massive amount of drugs.

25      That, of course, was after she had dropped off 200,000 pills

1   of MDMA, which is -- you know, she was dealing with millions of

2   dollars worth of drugs.

3      Ms. James was motivated by a need for money for her children.

4   I see no reason to think that that motivation won't continue in

5   the future.  There doesn't seem to be a plan for her to be able

6   to make money or to be able to take care of things in her life.

7      Mr. Coates, who was a co-defendant and who was not involved

8   in the cocaine, but was involved in the MDMA, was given a -- was

9   sentenced by this Court some time ago and received a fairly hefty

10   sentence.  Although he received some reductions for his role.

11      The government really thought and kind of the consensus was

12   that Ms. James should spend at least five years in prison on

13   this, because her guidelines really were so much higher and it

14   was so significant.

15      In light of the real tragedy of her life and her

16   intelligence, and maybe some ability to recoup her life for her

17   children, we were sort of moved to recommend 36 months.  But,

18   Your Honor, that is a huge departure.

19      We hope it is well founded with hope for her, but in many

20   ways we think that that's a gift, the 36 months.  So we're

21   recommending 36 months, the five years of supervised release.

22      We have no objection, of course, to any drug or treatment

23   program, mental health counseling, employment stuff.  Whatever

24   programs that she may avail herself of would be appropriate.

25      Thank you.

1          THE COURT:  Thanks very much, Ms. Roe.  All right.  Mr.

2    Zulauf.

3          MR. ZULAUF:  Your Honor, one of the best parts about

4    this job that I have is that we get to go and meet with a client,

5    we get to meet with their family, and we see them in times of

6    distress and difficulty.  And you start to get a sense of who the

7    people are and what they're like.

8      As you know, I've been at this for some 30 years, and I would

9    have to say that in the 30 years I don't think I've ever been

10   with a client who has gone through as much agony and as much pain

11   over what she -- the crime she committed as Ms. James.

12     I have been with her probably a dozen times in jail when a

13   good portion of our meeting is her crying and agonizing over the

14   fact she has committed this crime.  She's jeopardized her family.

15   She's jeopardized her relationship with her children.

16     It's quite moving.  It's also emotional and difficult.  But

17   one of the things you do get a sense of is how much punishment

18   has already been inflicted.  And I would suggest to the Court

19   that Ms. James has already been punished in a huge way.

20     Just the self-imposed punishment and the fact that this has

21   been a very, very difficult year for her being separated from her

22   children, knowing that she's the one who caused this, it was the

23   stupidity of her own actions that jeopardized her relationship

24   with her children, and yet she has to go on.

25     The good news is that she does have support from friends and

1 family and community that think the world of her.  Her mother and

2 stepfather and sister are here in Court today to be here with

3 her.

4    As you know from the evaluation, from the letters, the family

5 has done all they could to step in and help care for the children

6 and help provide support for Lucretia while she has been in jail.

7 But it has been quite a difficult year for her.

8    We have indeed recommended 12 months, I would add probably

9 that we should recommend 12 months and a day, if the Court were

10 inclined to do that, with three years of supervised release and

11 six months in a halfway house.

12    I understand Susan Roe's argument here that, you know, it's

13 some sort of fantasy that she will be released and then

14 everything will be fine and she will go on.

15    I don't think there's a single person here that is suggesting

16 that to the Court.  We all know it will be difficult.  But it's

17 going to be difficult if she's released soon and it's going to be

18 difficult if she's released later.

19    What she has to do now is bring together that family support,

20 bring together her desire to stay off of drugs and away from

21 drugs and away from that drug culture, bring together the family

22 support for her children and for her in getting vocational

23 training and mental health counseling.

24    And none of that is an easy road.  We all recognize that.

25 The good news is that we do have a mechanism in place so that

1   there will be potentially a halfway house, if the Court orders

2   that we pay, they will be helping her with mental health

3   counseling, with drug and alcohol counseling, with vocational

4   counseling, and on top of that we know that we have three years

5   of supervision from probation.

6       So it's not like we're turning her loose and hoping that this

7   will all magically happen.  She knows she's got a tough

8   assignment ahead of her to prove to the Court that she can both

9   be a model citizen and a model parent, and yet she knows she's

10  got to get vocational training, she's got to get a job.  She

11  needs the support and help of her family.

12      And so a lot has to come together, but, Your Honor, my sense

13  is that a huge part of rehabilitation is the desire to do it.

14  And in Lucretia James' case, I can indicate to the Court my

15  belief that there's nobody who has a stronger desire to go

16  through rehabilitation, deal with the issues she's had, deal with

17  the drug and alcohol issues, the mental health issues that she's

18  had.

19      And if there's somebody who has a chance of pulling this off,

20  I think Lucretia James does.  She comes into this -- of course,

21  we all know that, you know, part of what caused her to get into

22  this mess was a background that was outlined by Doctor Hastings.

23      And Doctor Hastings said on page 11 of her report that, in

24  summary, Ms. James' judgment and mental health was compromised at

25  the time of the commission of these crimes by the innerconnected

1    debilitating stresses of psychological problems, alcohol

2    addiction, poverty and underemployment.  Such problems do not

3    excuse any criminal actions, but certainly provide the context

4    within which such actions are likely to occur.

5         She goes on to say, though, that the good news about Ms.

6    James is that she does not have an antisocial personality

7    disorder.  She is a person that Doctor Hastings evaluated, she

8    tested, and she reaches the conclusion that based on the data

9    available Ms. James does not pose a risk to the community.

10        She has no prior criminal history, nor history of assaultive

11   behavior.  Ms. James' long-term prognosis is good if she remains

12   clean and sober.

13        I think we're all in agreement that one of the things we're

14   going to need to do if Ms. James is released from custody in the

15   short term or the long term is make sure she remains clean and

16   sober, and we need to make sure that there are programs in place

17   to help her do that.  And we need to make sure that there is

18   adequate supervision.

19        And it seems to me that with three years of supervised

20   release, together with drug and alcohol treatment at perhaps

21   Pioneer House, we put in place that mechanism.

22        Again, I've said it before, but I think probably the most

23   important part of rehabilitation is the desire to do it, and I

24   think there's nobody who has a stronger desire to show that she

25   can go through rehabilitation than Lucretia James.

1     You know, frankly, an awfully lot of this is just her

2  realization -- she's never -- this is her first offense.  She's

3  never been in Court before.  She's never been in jail before.

4  And the realization of the trouble she could get into and the

5  jeopardy she puts her children into has really hit home.

6     She didn't have that experience before.  This is not somebody

7  with a long criminal history.  This is a person who comes to the

8  Court and is placed in jail for the first time, and she has a

9  desire to prove to the Court that she can be a model parent, that

10  she can go through rehabilitation, that she can be a model

11  probationer.  If given the chance, it seems to me that she has an

12  excellent chance of being able to prove that to the Court.

13     We have asked the Court to consider in part the proposal

14  we've made because we think it actually is the best way for

15  Lucretia to both get the help that she needs here in Washington

16  and also remain in contact with her children here in Washington.

17     And if she's going to have followup treatment, mental health

18  treatment, vocational, health, it makes sense, in our minds, to

19  do that in Washington.

20     A way to do that is to give her a year in jail, with credit

21  for time served, order her to be on supervised release, and then

22  order as a condition of that supervised release that she spend

23  six months in a halfway house like Pioneer.

24     Thank you.

25          THE COURT:  Thanks, Mr. Zulauf.  Before I speak with Ms.

1   James, I just want to ask Mr. Robertson some questions on the

2   probation side.  Three questions, Mr. Robertson.  Why three years

3   of supervised release versus four or five?

4            PROBATION OFFICER:  Your Honor, I simply put the three

5   years in because I think that Ms. James is going to be the type

6   of person, and I'm just speaking from experience, that I think

7   three years is sufficient, and if we need to come back, we can

8   ask for an extension.

9            THE COURT:  All right.  Tell me about the staffing

10  within your organization about what to recommend in terms of the

11  length of prison term.

12           PROBATION OFFICER:  It was unanimous that a 36-month

13  sentence was appropriate.  We felt like her cooperation was

14  worthy of a reduction in time below the guideline range.

15      And then, of course, she'll be given the roughly seven months

16  that she's already served, which would put her at the 30-month

17  range, which, as Your Honor might know, is about the time the BOP

18  requests for placement into RDAP.

19           THE COURT:  And then the six months in a halfway house

20  that Mr. Zulauf is talking about, would that be a condition of

21  supervised release, and is that something that can be a condition

22  of supervised release, or are people coming out of prison

23  automatically being put through some sort of halfway house

24  reentry program?

25           PROBATION OFFICER:  That's something that BOP would

1   handle on their end.  This does not need to be ordered as a

2   condition of her supervised release.

3       If she's -- if they find her amenable to release to a halfway

4   house, they will place her there.  And the probation officer,

5   when she's released, can handle that part of it.

6           THE COURT:  So is there not a mechanism for making a

7   specific sentence to a halfway house, as Mr. Zulauf is

8   recommending?

9           PROBATION OFFICER:  No, there's not.

10          THE COURT:  Okay.  That's what I was worried about, Mr.

11  Zulauf.  Do you have any input on that?

12          MR. ZULAUF:  Well, Your Honor, I'd like to address that,

13  if I could.

14          THE COURT:  Sure.

15          MR. ZULAUF:  I spoke with Pioneer House yesterday, who

16  -- they said that if a halfway house designation was made as a

17  condition of supervised release, they would take Lucretia in.

18      And so it seems to me that the Court can do that, the Court

19  could say one of the conditions of supervised release is that she

20  go into a halfway house.

21          THE COURT:  Right.  But it wouldn't be a reduction of

22  her prison term, it would be after she completes her prison term

23  she would do the six months, which is what you're recommending?

24          MR. ZULAUF:  Right.

25          THE COURT:  All right.  Ms. James, is there anything you

1   want to say to me before I impose the sentence today?

2           THE DEFENDANT:  Sure.

3           THE COURT:  Okay.  Could you please go to the podium

4   with Mr. Zulauf?  Thanks.

5           THE DEFENDANT:  I didn't know if I could remember it.

6           THE COURT:  No, that's fine.  You can read it if you

7   want to.  Take your time.  If you want a little cup of water up

8   there, that's okay, too.

9           THE DEFENDANT:  Your Honor, I've been agonizing day

10  after day over my -- over my poor judgment.  I have continually

11  been distressed over the hurt that I've caused my children and my

12  family.

13      Every day I'm faced with the fact that I have lost this --

14  this time with my children and those closest to me.  All I really

15  wanted to do is to be a good parent and to be able to spend my

16  time with my children.  And this is a struggle for me not to be

17  with them.

18      I am sorry for the shame that I've caused, that I brought

19  onto my family.  I did not see the full scope of ramifications

20  that I was being asked to do.  But I assure you that this will

21  never happen again.

22      I cannot get back the time that I've lost.  And there's

23  nothing that will get me to do anything to jeopardize my time

24  with my family and my future.

25      I truly regret my bad decision.  And if you allow me a chance

1    to get my life back on track, with the support of my children and

2    my family and my friends and hopefully the system, I'll be --

3    I'll be a productive part of society again.  Please give me the

4    chance to be Lucretia James again.

5        Thank you.

6        THE COURT:  Thank you, Ms. James.  I have to ask you,

7    though, because I don't understand how you could think that

8    moving millions of dollars of illegal drugs up and down the West

9    Coast was going to be good for your children in any way, or good

10   for other peoples' children, who were being ignored or neglected

11   because their parents were strung out on ecstasy or cocaine.

12       How did you rationalize that in your own mind?

13       THE DEFENDANT:  I honestly wasn't thinking about that.

14   The only thing that I was -- somebody sought me out and asked --

15   knew my situation.  I wasn't getting anywhere in the Court system

16   with being able to get my children's father to help me.

17       And I was too proud to go on welfare, and I just figured --

18   they went and they said, well, it will be -- it will be easy.

19   We'll make sure that your house payments are paid.  It was a

20   really small amount compared to what I later found out that those

21   drugs are worth.

22       And the only thing I wanted to do was make sure that my house

23   wasn't going to get repossessed and I was going to be able to pay

24   my bills so I could be with my children.

25       And I didn't -- I didn't see what else it was.  I didn't ask

1    them.  And that was my -- that was my fault.  I should have -- I

2    should have thought about that.

3           THE COURT:  Growing up as a member of your tribe you saw

4    the devastation that drug abuse was having on so many people.

5    Didn't you make a correlation between what you were doing and the

6    terrible destruction to your own people from things like these

7    drugs?

8           THE DEFENDANT:  To be honest with you, Your Honor, I

9    was -- I was raised right on the outskirts of the reservation.

10   Most of the people that went to my school were predominantly

11   white.  There was a few Native Americans.

12       And the worst part that I'd seen was the fact that their

13   parents drank a lot of alcohol.  And that was what I'd seen out

14   of it.

15       Most of the people that I hung out with were predominantly

16   white.  And so I didn't -- my association with people on the

17   reservation was when I would see them I would just say hi, but I

18   didn't live right in the middle of -- in the middle of all of

19   that.

20          THE COURT:  Okay.  I appreciate that.  And I think when

21   Ms. Roe was talking about the fantasy of some of the people who

22   are writing in, I think -- maybe I'm wrong, but I think she might

23   have been talking about two sets of fantasies.

24       One is it was a bad decision, like that's all it was, was a

25   bad decision, rather than agreeing to participate in a

1    multi-state, if not multi-national, drug cartel that was moving

2    millions of dollars of drugs up and down the highway.  That's

3    more than just a bad decision.

4        But the other thing that I saw in the letters that's a

5    fantasy to me is there was no acknowledgment of the things that

6    the individuals who are writing the letters, some of whom are

7    here today, the role that they played in this.

8        I mean, your mother basically abandoned you to do her own

9    thing, which was admirable what she was doing, but that took a

10   terrible toll on you.

11       Subjecting you to years of sexual abuse from a family member

12   and then not supporting you when you came forward is a terrible

13   thing to do to you.  And I'm getting this she's an ideal person.

14   She made a single bad decision.  And all you have to do is put

15   her back with her children and everything will be right again.

16       I mean, Ms. James, you are a woman who under the right set of

17   circumstances could have been a CEO of a major company, or a

18   professor at a major university.  I mean, your intelligence and

19   your dignity is a personal natural resource that your community

20   and your tribe and your family needs.  I mean, we need people

21   like you to be productive members of society.

22       But partially because of the way you were neglected and

23   abused as a child and partially because of your own demons in

24   terms of being attracted to exactly the wrong kind of man has

25   left you in this situation.

1    And to restructure you to what you should be and could be is
2    going to take an awful lot of work on your part and the part of
3    the people around you.

4    I mean, I've never thought of a condition of supervised
5    release that says you shall not get involved with another man
6    without bringing him in here for me to look at and talk to, but I
7    feel like that with you, because you've got a series of loser
8    guys who shouldn't even be allowed to be in your presence, let
9    alone have any influence over you and tell you you're a slut, or
10   you're stupid, or you're a whore, or you're worthless.

11   I mean, you should flee those guys, rather than feel like
12   they have some control over you.  Now, I know you've got a father
13   of your children.  And, look, you've put your children in a
14   situation where he's the custodial parent.

15   I mean, could you do anything more destructive to your own
16   children than set up a situation where he's in charge?  It's a
17   terrible situation for you.

18   So we cannot -- and I know Mr. Zulauf is not minimizing
19   what's going to happen afterwards, but I need to tell you that
20   you cannot minimize what you did, which normally would call for a
21   mandatory 10-year prison term.

22   You cannot minimize the fact that it wasn't a bad decision.
23   It was a criminal and evil thing to do.  And to get yourself back
24   away from what you had become that allowed you to make this evil
25   and criminal decision is going to take an incredible amount of

1    work on your part.

2        Do you see that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Getting back together with your two children

5    in the state you're in now is not going to help yourself and not

6    going to help them, because there are too many things that are

7    still going to be there when you wake up the next day.

8        How am I going to handle this?  How am I going to feed them?

9    How am I going to deal with Robert?  How am I going to get child

10   support?  How am I going to get rid of any drug and alcohol

11   problem I have?

12       So regardless of what sentence you get here and regardless of

13   how much you regret what you did, what lies ahead of you is going

14   to be the hardest thing you've ever done in your life.  And no

15   one can do it but you.

16       Now, you'll get some help and assistance.  But it's going to

17   be the hardest work you've ever done.  Are you ready to do that?

18           THE DEFENDANT:  Yes, Your Honor, I am.

19           THE COURT:  All right.  Thank you, Ms. James.  You may

20   be seated.  Thanks, Mr. Zulauf.

21           MS. ROE:  Your Honor, if I -- I'm a little concerned

22   about the recommendation for three years of supervised release

23   with the probation officer's comment that if we need more we can

24   ask for more.

25           THE COURT:  I'm going to impose five years of supervised

1  release.  That's why I asked.  I just wanted to make sure I

2  could.  Because I do think that there's an incredible amount of

3  work that needs to be done.

4      It's much easier to terminate supervised release early if

5  everything is going great than it is to try to add it on later

6  on, which could only be done to a certain extent with a violation

7  and the like.  And I hope to not have any violations as we go

8  forward.

9      All right.  I have known both Ms. Roe and Mr. Zulauf for a

10  very, very long time, both as colleagues, as opposing counsel, as

11  a Judge hearing them argue cases before me, and I have a great

12  deal of respect for both of them.

13      And I think that they both know that I've seen hundreds,

14  thousands of cases.  And the sentencing process is difficult,

15  because we always have a tendency to want to reward people who

16  are intelligent, articulate and remind us of ourselves.

17      And we tend to have a lot less sympathy for people who are

18  not very good at speaking or writing and come from backgrounds

19  where they're violent and destructive.

20      So I look at Ms. James and, as I say, I see this potential

21  for tremendous good in her.  But I also have to temper it and

22  say, Judge Lasnik, you've got to remember there's been a lot of

23  people sitting where she is who were African American men or

24  Hispanic immigrants who maybe couldn't speak as well as she does

25  or write as well as she does, who are so far away from their

1    families that their families couldn't support them, or come from

2    such damaged families that their families had abandoned them

3    years ago.

4        And so when you're sending those people to prison for 10

5    years, 15 years, 20 years, you have to make sure you're being

6    fair to them and not just giving a pass to someone like Ms.

7    James, who you think really does get it, that she has true

8    remorse and regret, and that the shame of what she has done to

9    dishonor herself and her family is kind of punishment enough.

10        So I fight with myself in that area to make sure I'm being

11   true to fairness in sentencing and true equity in sentencing.  So

12   I start out very skeptical of any kind of reduction from what

13   would normally be here a long prison term.

14        Now, this is scored correctly as an offense level 27,

15   criminal history category of 1, and a range of 70 to 87 months.

16   I would grant the government's motion for a 5K departure, because

17   I do believe that there were difficult circumstances here.  And

18   Ms. James has stepped up and taken responsibility, even despite

19   some unusual circumstances.  And much will be expected of her

20   going forward also.

21        So normally that would yield a sentence for me of

22   approximately half of the bottom of the range, which is 35

23   months, which is approximately what the government and probation

24   have recommended.

25        But I do take into consideration the really excellent report

1   by Doctor Hastings that establishes clearly that what -- while it

2   doesn't excuse what Ms. James did, it explains to a certain

3   extent how she could act with a certain cognitive dissidence here

4   and do something that was so evil and criminal, but not fully

5   realize what it was.

6       It's a form of a diminished capacity, if you will, that

7   Doctor Hastings talks about here, because of the chronic

8   post-traumatic stress disorder, the lack of self-esteem and

9   self-image and the abuse that she suffered which she

10  internalized.  So I do think that justifies to a certain extent a

11  lesser sentence in this area.

12      What is the right sentence?  What could and should the Court

13  do in an attempt to try to consider what's in the best interests

14  of the children out there?  I really have to set that aside to a

15  certain extent.  I'm not here as a dependency Judge or family

16  Court Judge to decide what should happen with the children.

17      I have to come up with a sentence that takes into

18  consideration the statutory factors of 3553, the mitigating

19  circumstances that I've identified here, and the seriousness, the

20  real harsh reality that this is a Class A felony offense, one of

21  the most serious offenses that a person can commit.

22      In balancing all of those things together, I am going to

23  reduce the sentence I impose to 18 months imprisonment, basically

24  cutting another half off of what the government and the probation

25  have asked for here today.

1    I will, of course, give credit for time served and I will, if

2    it's your desire, Mr. Zulauf, I will recommend that she remain in

3    the Seatac detention facility for the remaining period of time,

4    which, if she is released through some sort of halfway house,

5    will be less than a year going forward.

6    You can let me know after I finish on that regard.  I will

7    impose five years of supervised release.  And, Ms. James, you'll

8    be subject to standard conditions, as well as the following

9    special conditions:

10   You will cooperate in the collection of DNA.  You must not

11   possess any firearm or destructive device.  You will submit to

12   one drug or alcohol test within 15 days of your placement on

13   supervised release, and at least two periodic tests thereafter,

14   not to exceed eight valid tests per month.

15   You will participate as instructed by U.S. probation in a

16   program approved for the treatment of narcotic addiction, drug

17   dependency or substance abuse, which will include testing.  And

18   you must abstain from the use of all alcohol or other intoxicants

19   during supervision.

20   You shall also participate in any counseling or mental health

21   program approved by the United States probation office.  And you

22   must contribute to the cost of both treatment programs to the

23   extent that you are financially able to do so.

24   You will submit to a search of your person, residence,

25   office, property, storage unit or vehicle conducted in a

1    reasonable time and manner by probation or law enforcement.

2        I will waive the fine.  There is a $100 special assessment,

3    which is due immediately.  I would also in addition recommend the

4    six months.  It wasn't part of -- quite what Mr. Zulauf

5    recommended, but I do think that that up to -- I'm going to say

6    up to six months in a halfway house, such as the Pioneer

7    facility, for reentry and also treatment, if U.S. Probation deems

8    it appropriate, should be a condition of supervised release.

9        I understand you were using it as kind of a quid pro quo for

10   prison time, and as a condition of release, you may not want it

11   to be as long as six months.  And I would think that it would be

12   more likely to be 90 days, but if the probation department

13   considers that less time is needed, they have the authority to do

14   less time.

15       If they consider the full time is needed, they have the up to

16   six months, in the discretion of the U.S. supervising probation

17   officer.

18       And did you want to talk to Ms. James about where she does

19   the time?

20           MR. ZULAUF:  Could I for a moment?

21           THE COURT:  Sure.

22           MS. ROE:  Your Honor, I'm sorry, is that a

23   recommendation or is that an order, the up to six months?

24           THE COURT:  It's part of the order, up to six months.

25           MS. ROE:  Okay.

1          THE COURT:  Within the condition of supervised release.

2          MS. ROE:  Okay.

3          MR. ZULAUF:  Your Honor, her preference is to stay at

4   Seatac.

5          THE COURT:  It's just a recommendation on my part.  The

6   Bureau of Prisons will decide that based on other factors.  But

7   it has happened, particularly for some women inmates, since the

8   nearest women's facility is so far away.

9          MS. ROE:  Okay.  I've prepared a judgment which I have

10  handed to defense counsel for review.

11      (Brief pause.)

12         MR. ZULAUF:  Your Honor, I have just one question, and

13  this -- I don't know if there's a technical reason that we cannot

14  give her credit for all of the time she has served on this, but

15  Susan Roe has noted that she would get credit for time served

16  since July 30th, 2008, where she was -- she was actually arrested

17  and has been sitting in an institution since March 10th, 2008.

18         MS. ROE:  She was in state custody, Your Honor, in

19  California.  There were multiple charges.  She didn't come into

20  federal custody until July.  And I think it's federal time that

21  counts.  And that's reflected in the probation department's --

22         THE COURT:  It is correctly calculated from when she

23  came into federal custody, but what I would do under those

24  circumstances -- sometimes in immigration cases, is we take the

25  number and then deduct from it.  But I already kind of factored

1  that in, so I'm not going to give any extra time off.  So she

2  just gets it from July 30, which is about 199 days.

3           MR. ZULAUF:  I don't know if I can make a better

4  argument to you, but my -- my sense in this case is that she was

5  arrested in part because of the federal investigation.  And

6  although she was held technically in state custody, this was due

7  in at least large part because of the federal investigation.  And

8  they knew all along that there were going to be federal charges

9  here.

10          THE COURT:  If I followed the government's

11  recommendation and I did the 36 months, I'd find a way to give

12  you the credit.  But I've already chopped it down so far I just

13  can't do it anymore.

14          MR. ZULAUF:  I appreciate the thought, though.

15          THE COURT:  Okay.

16          MR. ZULAUF:  I think the judgment reflects the Court's

17  order.

18          THE COURT:  Okay.  You can approach.  Thanks, Mr.

19  Zulauf.  You can bring it up to Kerry.  Thank you.  Ms. Roe, was

20  there a waiver of appeal?  I didn't check the plea agreement.

21          MS. ROE:  Your Honor, I certainly hope so.  Let me just

22  check that.  Yes, paragraph 11 of the plea agreement.

23          THE COURT:  I thought so.  All right.  I've signed the

24  judgment in the case.  Ms. James, the five years of supervised

25  release -- I know you've not really been a part of the criminal

1    justice system and that's great.

2        Let me tell you how it's going to work.  You will do your

3    prison time, hopefully still at Seatac.  You will come out of the

4    Bureau of Prisons into some sort of reentry facility.

5        And Mr. Robertson can talk to you about this after the

6    sentencing, too.  But then you have a supervising probation

7    officer who will spend a lot of time with you about programs,

8    about helping you get employment, about helping you in your

9    family situation, too.

10       And there will be lots of drug testing, lots of checks on

11   you.  If anything goes wrong, your probation officer will

12   determine do you need to come back in front of Judge Lasnik.  I

13   mean, I'm your Judge for the next period of time.  Anything that

14   happens, you'll come back in front of me.  I'll know what we

15   talked about here today.  I'll know what you promised me.

16       But I also know that we're asking a lot of you.  And when you

17   come out you're going to be under tremendous stress.  You have to

18   fight for your children again.  You have to worry about paying

19   the mortgage and you may be coming out when this country is still

20   in a terrible economic depression and it's going to be a

21   difficult time for you.

22       Use your probation officer not as a cop who is watching over

23   you, but as a person who really wants you to succeed and will

24   help you in lots of ways.

25       And if things are going badly for you and you are feeling a

1   temptation to do something you shouldn't do, if you contact your

2   probation officer, they can intervene and we can stop it before

3   it gets out of hand.

4       If the first time your probation officer finds out there's a

5   problem because you've been arrested on a new charge, there's

6   very little we can do for you in that regard.

7       So you've overcome a lot in your life.  You have not been

8   dealt with fairly by life in a lot of ways.  But you have going

9   for you what a lot of people don't have, tremendous intelligence,

10  you have a lot of dignity and class.

11      You have to believe in yourself and trust in yourself.  I

12  hope your time with Mr. Zulauf is something you look back on and

13  say it was so nice to meet a person like him with intelligence

14  and kindness.  And he seems to really like me.  You know, he

15  enjoyed his time with me.

16      Doesn't that tell you something about -- now, he's already

17  taken with a very beautiful wife Octavia.  But there are men out

18  there who will treat you like you should be treated, who will

19  respect you and honor you for what you are.

20      Don't settle for the losers you see around you who will just

21  do nothing but degrade you and debase you.  I can't say it

22  strongly enough, I have seen too many strong and talented women

23  allow themselves to be dominated by loser guys because of other

24  things that happened in their life.  You have got to be strong

25  for yourself, strong for your children, and strong for this

1    community, okay?

2        All right.  Good luck.

3            MR. ZULAUF:  Your Honor, could I have perhaps about five

4    minutes with Lucretia and her family and perhaps consult with the

5    probation officer about this issue at Seatac?

6        One of the things that I'm concerned about is we now do have

7    a lengthy period of time at Seatac, which I think is actually

8    quite a hard place to spend time.

9            THE COURT:  Well, you can't bring the family up.  You

10   can -- I'll stay out here on the bench, and we'll just go off the

11   record for a little while, and you can --

12           MR. ZULAUF:  If I could just have a couple of minutes.

13           THE COURT:  Take as much time as you need.

14       (Brief pause.)

15           MR. ZULAUF:  Your Honor, after consulting and talking, I

16   think we're back to where we began, I think we would like a

17   recommendation in the judgment for Seatac.

18           THE COURT:  Okay.  That's in there right now.  Okay.

19   Great.  Thanks, Mr. Zulauf, Ms. Roe, Mr. Robertson.  Good luck to

20   you, Ms. James.  I really, really sincerely mean it for you and

21   for everyone out there, okay?  All right.  Thanks.

22           MS. ROE:  Thank you, Your Honor.

23       (Recess.)

24

25

CERTIFICATE

        I, Joseph F. Roth, Official Court Reporter, do hereby certify that the foregoing transcript is correct.


                                S/Joseph F. Roth
                                _____
                                Joseph F. Roth